**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James N Ingbretson, | No. CV-25-00522-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff James Ingbretson challenges the Commissioner of Social Security's denial of his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Magistrate Judge Maria S. Aguilera issued a Report and Recommendation ("R&R"), recommending that the Commissioner's decision be affirmed. (Doc. 20.) Plaintiff filed an Objection (Doc. 21), to which the Commissioner responded (Doc. 22). For the following reasons, the Court will reverse and remand for further administrative proceedings.

## I.    Background

After Plaintiff's applications for disability insurance benefits and supplemental security income were denied at the initial level and upon reconsideration, Administrative Law Judge ("ALJ") Yasmin Elias held a hearing and a supplemental hearing, and thereafter issued a decision finding Plaintiff not disabled. (AR 17-31.) The Appeals Council denied review (AR 1-3), rendering the ALJ's decision the final decision of the Commissioner.

The ALJ followed the five-step sequential evaluation process set forth in the Social

Security regulations.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date of July 1, 2021.  (AR 19-20.)  At Step Two, the ALJ found that Plaintiff has the following severe impairments: right patellar rupture and septic arthritis, status post-surgery, and obesity.  (AR 20-22.)  The ALJ recognized that Plaintiff alleged post-traumatic stress disorder ("PTSD") to be a disabling impairment, and that Plaintiff has been diagnosed with depressive, anxiety, and trauma-related mental impairments, but the ALJ found that Plaintiff has only minor limitations in any area of mental functioning and therefore that Plaintiff's mental impairments are non-severe.  (*Id.*)  In evaluating Plaintiff's mental limitations, the ALJ discounted the opinions of psychological consultative examiner MaryAnne Belton, PsyD and state agency psychological consultants Jo McClain, PsyD, and Ronald Nathan, MD.  (AR 28-29.)  At Step Three, the ALJ found that Plaintiff does not have an impairment that meets or medically equals the severity of a listed impairment.  (AR 22.)  At Step Four, the ALJ found that Plaintiff has no past relevant work and has the residual functional capacity to perform light work with certain physical restrictions.  (AR 22-29.)  At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform given his age, education, work experience, and residual functional capacity, and that Plaintiff therefore is not disabled within the meaning of the Social Security Act.  (AR 29-30.)

In his Opening Brief, Plaintiff challenges the ALJ's determination that he does not have a medically determinable severe mental impairment.  (Doc. 17.)  The R&R finds that

---

[1] At Step One of this process, an ALJ must determine whether a claimant is doing substantial gainful activity; if so, the claimant will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At Step Two, the ALJ determines whether the claimant has a severe medically determinable impairment that meets the duration requirement; if not, the claimant will be found not disabled.  *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment; if so, the claimant will be found disabled.  *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At Step Four, the ALJ determines whether the claimant can perform past relevant work given his or her residual functional capacity; if so, the claimant will be found not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Finally, at Step Five, the ALJ determines whether the claimant can adjust to other work given his or her residual functional capacity, age, education, and work experience; if so, the claimant will be found not disabled.  *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

the ALJ properly discounted the opinions of Drs. Belton, McClain, and Nathan, and that substantial evidence supports the ALJ's determination that Plaintiff does not have a severe mental impairment.  (Doc. 20.)

## II.    Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

The Court must affirm a decision of the Commissioner of Social Security if the decision "is supported by substantial evidence and based on the application of correct legal standards." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 948, 954 (9th Cir. 2002).  It is "more than a scintilla, but less than a preponderance." *Id.*  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "weigh both the evidence that supports and the evidence that detracts from the ALJ's factual conclusions." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks omitted).  The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted).  When evidence "is susceptible to more than one rational interpretation, one of which supports the ALJ's decision," the Court must uphold the ALJ's conclusion. *Thomas*, 278 F.3d at 954.  The Court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

Error in a social security determination is subject to harmless-error analysis. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).  An error is harmless if

it "was inconsequential to the ultimate nondisability determination." *Id.* at 1055.

### III.    Discussion

In his Objection to the R&R, Plaintiff argues that reversal is warranted because the ALJ improperly substituted her own medical opinions for the uncontradicted medical opinions in the record. (Doc. 21.)  Plaintiff contends that Dr. Belton's opinion is supported by Plaintiff's history of mental illness and trauma, his educational and occupational history, and Dr. Belton's observations of him during the clinical evaluation. (*Id.* at 3.)  Plaintiff further contends that his lack of insight into his mental illness does not detract from Dr. Belton's evaluation, and that it was improper for the ALJ to reject the opinions of Drs. Belton, McClain, and Nathan based on Plaintiff's lack of mental health treatment history without developing the record by asking Plaintiff to explain the lack of treatment. (*Id.* at 4-7.)  Defendant responds that substantial evidence supports the ALJ's evaluation of the medical opinion evidence from Drs. Belton, McClain, and Nathan, and that any error was harmless given the vocational expert testimony from Plaintiff's administrative hearing. (Doc. 22.)

In evaluating a claimant's mental impairment, an ALJ must determine the degree of limitations in the following areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace, and adapting or managing oneself.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  If the ALJ finds no more than mild limitations in these areas, and the evidence indicates no more than a mild limitation in the claimant's ability to perform basic work activities, then the ALJ will typically conclude that the claimant's mental impairment is non-severe.  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

An ALJ must evaluate the persuasiveness of medical opinions by examining factors including supportability, consistency, the nature of the medical source's relationship with the claimant, and the medical source's specialization.  *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Supportability and consistency are the most important factors.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).  The supportability factor examines the relevance of the

objective medical evidence and supporting explanations presented by the medical source, and consistency examines whether the medical source's opinion is consistent with the evidence from other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

### A.    Dr. Belton

Dr. Belton conducted a clinical interview of Plaintiff and administered a mini mental status examination. (AR 985-990.) She diagnosed Plaintiff with PTSD, with symptomatology that began many years ago and "a fluctuating course of experience through the years." (AR 988.) She opined that, as Plaintiff's emotional symptoms activate, his ability to comprehend multi-step directions and follow detailed instructions will diminish; he will struggle to maintain concentration and to efficiently comply with supervisory requests with respect to complex, multi-faceted tasks; and he will have difficulty responding quickly and efficiently to unpredictable situations. (AR 990.)

The ALJ found that Dr. Belton's opinion was "scarcely supported by her own interview of [Plaintiff] beyond repeating his subjective complaints and assuming how having posttraumatic stress disorder might theoretically affect his mental capacity." (AR 29.) The ALJ noted that, beyond "acting somewhat evasively," Plaintiff seemed to exhibit normal behavior and intellectual functioning during Dr. Belton's examination, and he achieved a near-perfect score on his mini-mental status examination. (*Id.*) The ALJ found that Dr. Belton's opinion was also inconsistent with Plaintiff's lack of mental health treatment history and Plaintiff's statements regarding his activities of daily living and his lack of concern regarding his comprehension skills. (*Id.*)

An ALJ may discount a medical source's opinion if it is based "to a large extent" on a claimant's "self-reports" instead of "clinical evidence, and the ALJ finds the [claimant] not credible." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, Dr. Belton based her opinions on her observations of Plaintiff in addition to Plaintiff's self-reported history and symptoms. Specifically, Dr. Belton noted that Plaintiff "required frequent invitations to elaborate on his responses and offer additional details," and that he

"presented with flat affect" and "an indifferent, apathetic disposition."  (AR 987.) Furthermore, even assuming that Dr. Belton based her opinion to a large extent on Plaintiff's self-reports, the ALJ erred in discounting Dr. Belton's opinion on this basis because the ALJ did not explain why Plaintiff's statements concerning his symptoms were not credible.

Plaintiff reported to Dr. Belton that he had an abusive childhood and a history of PTSD and anxiety.  (AR 986.)  He stated that he "revert[s] back" in his mind to his childhood, that he "freak[s] out" if someone wakes him up, that he is reclusive and doesn't like talking to people, that he has lost friends as a result, and that he is in a "recurring depressive" mood, with only fleeting moments of happiness.  (*Id.*)  The statements that Plaintiff made to Dr. Belton are consistent with statements he made during inpatient alcohol rehabilitation at the Arizona Rehab Campus.  The records from Plaintiff's inpatient rehabilitation reflect that Plaintiff reported an abusive and traumatic childhood, with prior diagnoses and present symptoms of depression, anxiety, and PTSD.  (AR 1375-1378, 1430-1432.)  Although Plaintiff did not testify regarding his mental health impairments during his administrative hearings, the ALJ was required to consider all available evidence in evaluating the effect of Plaintiff's symptoms, including Plaintiff's statements to medical providers.  *See* 20 C.F.R. § 404.1529(c)(1).  It was improper for the ALJ to discount Dr. Belton's opinions for relying on Plaintiff's self-reports without explaining why the ALJ found Plaintiff's statements concerning his symptoms to be lacking in credibility.

The ALJ also erred in failing to develop the record concerning Plaintiff's lack of mental health treatment.  An "ALJ is permitted to consider lack of treatment" in evaluating the effects of a claimant's impairment.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  However, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  An ALJ has a duty to develop the record if there are ambiguities or inadequacies, *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011), and this duty is "heightened where the claimant may be mentally ill and thus unable to protect [his]

own interests," *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, the record is inadequate and ambiguous with respect to Plaintiff's mental impairments and mental health treatment history.[2] There are indications in the record that Plaintiff was prescribed and/or took medication for depression and anxiety (*see, e.g.*, AR 366, 592, 604, 964), and he reported to Dr. Belton a past history of involvement in therapy services (AR 986). Given these references to mental health treatment, it is unclear whether the medical records are simply incomplete. Furthermore, the record is inadequate and ambiguous with respect to the issue of whether Plaintiff's lack of mental health treatment history is attributable to mild symptom severity or to Plaintiff's poor judgment and insight. There are indications in the record that Plaintiff's mental health symptoms detrimentally impact his ability to follow medical advice. For example, the Arizona Rehab Campus records indicate Plaintiff twice discharged himself against medical advice, one time explaining that he was doing so due to worsening anxiety. (AR 1416, 1451.)[3] Finally, the record reflects that Plaintiff reported to Arizona Rehab Campus that he was a veteran whose wartime service contributed to his PTSD symptoms (*see* AR 1376, 1378, 1432), and the record is inadequate and ambiguous concerning Plaintiff's possible military service and its effect on his mental impairments. Given the inadequacies and ambiguities in the record, the ALJ erred by discounting Dr. Belton's opinion as inconsistent with Plaintiff's lack of mental health treatment history without first asking Plaintiff to explain the lack of mental health treatment history.

It is true that Plaintiff's mini mental status examination did not indicate cognitive impairment and that Dr. Belton observed Plaintiff to have a coherent, linear, and intact thought process. (AR 987-988.) However, these benign "observations of cognitive functioning" do not contradict Plaintiff's "reported symptoms of depression and . . .

---

[2] Given the inadequacies and ambiguities in the record concerning Plaintiff's insight into his mental health impairments, Plaintiff's stated lack of concern with respect to his concentration abilities does not constitute substantial evidence supporting the ALJ's rejection of Dr. Belton's opinion.

[3] The record contains indications that Plaintiff also made poor decisions in following medical advice with respect to his physical impairments. (*See, e.g.*, AR 934 (noting poor decisions in failing to use knee immobilizer), 1165 (elopement from Tucson Medical Center Emergency Department).)

- 7 -

anxiety." *Ghanim*, 763 F.3d at 1164. Furthermore, Dr. Belton opined that the effects of Plaintiff's mental health impairments would wax and wane, with difficulties in cognition arising only when Plaintiff's cortisol and emotional symptoms elevate. (AR 990.) Plaintiff's performance on the mini mental status examination and Dr. Belton's observation of normal thought process do not constitute substantial evidence supporting the ALJ's rejection of Dr. Belton's opinion.

Although Plaintiff reported to Dr. Belton an ability to engage in daily life tasks independently, he also reported interpersonal relationship difficulties and avoidant behavior resulting from his mental health impairments, as well as intrusive symptoms of PTSD and depression. (AR 986, 988.) In light of the totality of Plaintiff's statements concerning his mental health symptoms, substantial evidence does not support the ALJ's rejection of Dr. Belton's opinion based on inconsistencies with Plaintiff's reports of daily living.

In conclusion, the ALJ erred in rejecting Dr. Belton's opinion without explaining why she found Plaintiff's statements concerning his symptoms not credible and without developing the record concerning Plaintiff's mental health impairments and lack of treatment history.

### B.    Drs. McClain and Nathan

Dr. McClain concluded that Plaintiff has marked limitations in his ability to interact appropriately with the general public, as well as moderate limitations in his ability to maintain attention and concentration for extended periods; his ability to work in coordination with or in proximity to others without being distracted by them; his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; his ability to accept instructions and respond appropriately to criticism from supervisors; and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 93-94, 116-117.)

Dr. Nathan concluded that Plaintiff has moderate limitations in his ability to understand. remember, and carry out detailed instructions; his ability to maintain attention

and concentration for extended periods; his ability to work in coordination with or in proximity to others without being distracted by them; his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; his ability to interact appropriately with the general public; and his ability to respond appropriately to changes in the work setting. (AR 130-131, 140-141.)

The ALJ discounted the opinions of Drs. McClain and Nathan on the grounds that they were too reliant on Dr. Belton's opinion, and that they were inconsistent with Plaintiff's lack of mental health treatment history and his "grossly benign mental status examinations, but for mild mood disturbance." (AR 28.) Based on the above finding that the ALJ erred in rejecting Dr. Belton's opinion, the ALJ also erred in discounting the opinions of Drs. McClain and Nathan as overly reliant on Dr. Belton's opinion. Furthermore, as discussed above, the ALJ erred in discounting the opinions of Drs. McClain and Nathan as inconsistent with Plaintiff's lack of mental health treatment history without first developing the record as to the reasons for the lack of such treatment history.

Finally, substantial evidence does not support the ALJ's decision to discount the opinions of Drs. McClain and Nathan based on inconsistencies with Plaintiff's mental status examinations. It is true that Plaintiff's medical records reflect multiple observations by medical providers of normal mood, affect, and behavior. (*See, e.g.*, AR 586, 625, 937, 1060, 1086, 1148, 1164, 1172, 1192, 1342.) However, these observations were made by non-specialists during the course of medical treatment unrelated to mental health, and they are accordingly entitled to less weight than the observations of Dr. Belton during her clinical examination. Furthermore, consistent with Dr. Belton's opinion that Plaintiff's mental health symptoms wax and wane (AR 990), Plaintiff was observed during other medical encounters to be agitated, confused, tearful, anxious, and depressed. (AR 592, 596, 604, 1036, 1259, 1261, AR 1390, 1400, 1442, 1447.) Mental status examinations conducted during Plaintiff's inpatient rehabilitation at Arizona Rehab Campus note that Plaintiff presented with a flat affect and depressed, anxious mood. (AR 1378, 1424, 1433.) . . . .

### C.    Harmless Error Analysis

The ALJ found that Plaintiff has no more than mild limitations in any of the four areas of mental functioning.  (AR 21-22.)  The improperly discounted opinions of Drs. Belton, McClain, and Nathan support a finding that Plaintiff has at least moderate limitations in a number of areas of mental functioning.  Accordingly, the ALJ's errors in discounting the opinions of Drs. Belton, McClain, and Nathan impacted the ALJ's Step Two finding.  Furthermore, although the ALJ asked the vocational expert about certain cognitive limitations, the hypothetical presented to the vocational expert did not reflect all the limitations set forth in the improperly discounted medical source opinions.  The ALJ asked the vocational expert about a hypothetical individual who could understand, remember, and apply simple instructions to complete simple tasks at an adequate pace and persistence; could have occasional and superficial interactions with the public; could frequently interact with co-workers and supervisors, and could adapt to minor changes in a routine work setting.  (AR 70.)  Dr. McClain opined that Plaintiff should have only incidental exposure to the public and only occasional interaction with supervisors and co-workers.  (AR 94, 117.) Dr. Nathan opined that Plaintiff would do best with minimal contact with strangers and that he may need repetition to master new tasks.  (AR 131, 141.) Because the vocational expert's testimony did not fully incorporate the limitations set forth in the improperly discounted medical source opinions, the ALJ's errors in discounting those opinions were not harmless.

The Court finds that remand for further administrative proceedings is appropriate.

**IT IS ORDERED** that Plaintiff's Objection (Doc. 21) is **granted**, and the Report and Recommendation (Doc. 20) is **rejected**, for the reasons set forth above.

**IT IS FURTHER ORDERED** that the above-captioned matter is **remanded** to the Commissioner of Social Security for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the administrative law judge shall take further action as warranted to complete the administrative record, offer Plaintiff the opportunity for a hearing, further evaluate Plaintiff's alleged symptoms and the reasons for

Plaintiff's lack of mental health treatment history, and issue a new decision.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff and close this case.

Dated this 13th day of May, 2026.

_____
Honorable Rosemary Márquez
United States District Judge